UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TORIANO GERMAINE HUDSON,<br><br>            Petitioner,<br><br>   v.<br><br>M. SEXTON,<br><br>            Respondent. | Case No. 17-cv-04373-EMC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.     INTRODUCTION

Toriano Germaine Hudson, a prisoner currently incarcerated at the California State Prison-Solano, filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Hudson's petition is now before the Court for review on the merits. For the reasons discussed below, the petition for writ of habeas corpus is **DENIED**.

## II.     BACKGROUND

### A.   The Crime

On January 17, 2014, Lucio Sanchez was driving his pickup truck in the northbound lane of Seventh Street in Richmond when he was struck on the side by an SUV. Mr. Sanchez never saw the SUV until it crossed into his lane and struck him from the left. Reporter's Transcript ("RT") 302-304. After hitting Mr. Sanchez's car, the SUV reversed, then drove forward, striking other cars. Mr. Sanchez observed Mr. Hudson exit the vehicle, and later identified him to police as the driver of the SUV. RT 308-313.

Giovanni Wafer drove her mother-in-law, Martha Wilson, to Ms. Wilson's sister's house on Seventh Street. RT 215, 240-41. Ms. Wafer parked by the curb, and Ms. Wilson opened the door and began to exit. The car was struck on the driver's side headlight by a Cadillac Escalade,

knocking Ms. Wilson out of the vehicle. RT 216, 241-43. Ms. Wilson fell on her face and hit the left side of her body on the sidewalk. When Ms. Wafer observed Ms. Wilson after she was thrown from the car, Ms. Wilson was face down and not moving. RT 245. She was transported to the hospital where she received stitches in her head. RT 218.

Lakeya Green heard some loud crashes and, when she came outside to see what happened, she observed that all the cars in front of the house had been "smashed up," and an Escalade, with Mr. Hudson in the driver's seat, had crashed next door. RT 185-86, 187-89. After the Escalade backed up and then drove forward, hitting Ms. Wafer's car again, Ms. Green banged on Mr. Hudson's window and opened his SUV door, yelling for him to stop. RT 190-92.

Police Officer Anthony Diaz arrived at the scene and observed the Cadillac SUV with smoke coming from the hood, as well as several parked cars with major damage. No one was in the SUV, but a large crowd had gathered and informed Officer Diaz that Mr. Hudson had fled and was in a rear yard area. RT 375-380. Other police officers arrived, and Mr. Hudson was arrested. RT 381-82. Mr. Hudson was placed in the police car, but later the officers attempted to remove him from the police car and an altercation ensued. RT 388-405. Mr. Hudson was taken to the hospital where his blood was drawn. RT 255, 257. A criminalist later testified that the result of the blood draw showed Mr. Hudson had a blood alcohol content of 0.20 percent, a level at which anyone driving an automobile would be impaired. RT 292, 296.

B.    Procedural History

Mr. Hudson was charged in Contra Costa County Superior Court with the following counts: (1) driving under the influence causing injury (Cal. Veh. Code § 23153(a)); (2) driving with a blood alcohol level of 0.08% causing injury (Cal. Veh. Code § 23153(b)); (3) leaving the scene of an accident with injury (Cal. Veh. Code § 20001(a)/(b)(1)); (4) hit and run driving (Cal. Veh. Code § 20002(a)); (5) resisting an officer by force, violence or threats (Cal. Pen. Code § 69); (6) battery on a peace officer (Cal. Pen. Code § 242/243(b)); and (7) obstructing a peace officer (Cal. Pen. Code § 148(a)(1)). Counts 1 and 2 also alleged that Mr. Hudson personally inflicted great bodily injury, *see* Cal. Pen. Code § 12022.7(a). It was also alleged that Mr. Hudson had suffered two prior serious felony strike convictions, *see* Cal. Pen. Code §§ 667(a)(1); (b)-(i) and

1170.12. CT 260-266. The jury returned guilty verdicts on counts 1 through 4, deadlocked on the remaining counts, and found true the great bodily injury allegations. CT 368-371, 381-386. The trial court found true allegations that Mr. Hudson had suffered two prior serious felony convictions. On July 31, 2015, the trial court sentenced Mr. Hudson to a total term of 35 years to life in state prison. CT 387; 432-439. The California Court of Appeal affirmed the conviction. *People v. Hudson*, 2017 WL 1075430 (Cal. Ct. App. Mar. 22, 2017). The California Supreme Court denied review. Docket No. 17-8.

Mr. Hudson then filed his federal habeas petition, where he raised three claims: (1) that he received an illegal sentencing enhancement; (2) that his right to counsel was denied; and (3) that the trial court erroneously denied his *Marsden* motion for new counsel. Because his first claim was unexhausted, while his federal habeas petition was pending, Mr. Hudson also filed a habeas petition before the California Supreme Court to exhaust the first claim, which was denied. Docket No. 17-9. He then filed an amended federal habeas petition, Docket. No. 16, which is currently before the Court. Mr. Hudson's amended habeas petition raises three claims: (1) that he lacked the requisite specific intent necessary for a sentencing enhancement; (2) that he was not competent to stand trial or to represent himself; and (3) that his Sixth Amendment right to counsel was violated when the trial judge denied his *Marsden* motion for new counsel. Respondent filed an answer to the order to show cause. Docket No. 17. Mr. Hudson filed a traverse, Docket No. 20, and an amended traverse, Docket No. 22. The Court has considered both the traverse and the amended traverse.

### III.   JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Contra Costa County, California, which is within this judicial district. 28 U.S.C. §§ 84, 2241(d).

### IV.   STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in

3

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism And Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court, if there is a reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

# V.    **DISCUSSION**

A.    <u>Sufficiency of the Evidence For Sentence Enhancement</u>

    1.    <u>Exhaustion</u>

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are first required to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982).

Mr. Hudson's first claim is that his sentence should not have been enhanced for causing great bodily injury because he lacked the requisite specific intent. Amended Petition, Docket No. 16 at 5. Respondent asserts that this claim has not been exhausted and that it fails on the merits. Previously Mr. Hudson conceded that the claim was not exhausted because it was not presented in his state appellate proceedings, but in the intervening time he filed a habeas petition in state court to exhaust the claim. However, Mr. Hudson's state habeas petition did not include any supporting documents, and the California Supreme Court denied the habeas petition, with a citation to *People v. Duvall*, 9 Cal.4th 464, 474 (Cal. 1995), including the parenthetical that "a petition for a writ of habeas corpus must include copies of reasonably available documentary evidence." Mr. Hudson's specific intent claim was raised only in his state habeas petition, thus the last reasoned decision is the California Supreme Court's denial of his habeas petition.

Under California law, a denial of a habeas petition with a citation to *Duvall* indicates that a petitioner has failed to include copies of reasonably available documentary evidence, a curable defect. It can be cured in a renewed state petition that includes the documentary evidence, and state judicial remedies are not exhausted in such a case. When the California Supreme Court summarily denies a petition for writ of habeas corpus with citations to both *Duvall* and *In re. Swain*, 34 Cal.2d 300, 304 (Cal. 1949), the decision is in effect, the grant of a demurrer. *See Curiel v. Miller*, 830 F.3d 864, 869 (9th Cir. 2016). Although the California Supreme Court did not cite *Swain*, it did cite to *Duvall*. The court thus dismissed the petition for failure to attach necessary documents; this suggests Mr. Hudson could return to the California Supreme Court with

a new petition for writ of habeas corpus with the necessary documents.  Here, Mr. Hudson could exhaust by filing a new habeas petition in the California Supreme Court and attaching the necessary supporting documents.  The claim is therefore unexhausted.

The district court may deny, but not grant, relief on a habeas petition that presents an unexhausted claim.  *See* 28 U.S.C. § 2254(b)(2).  The district court can deny an unexhausted claim on the merits if "it is perfectly clear that the applicant does not raise even a colorable federal claim."  *Cassett v. Stewart*, 406 F.3d 614, 623 (9th Cir. 2005) (citation omitted).  Here, despite Mr. Hudson's failure to properly exhaust his claim regarding specific intent, the Court will nevertheless deny the claim on the merits.

### 2. The Claim Fails on The Merits

A sentence enhancement violates due process if there is insufficient evidence to support the enhancement.  *See Jackson v. Virginia*, 443 U.S. 307, 315, 321 (1979); *Garcia v. Carey*, 395 F.3d 1099, 1102 (9th Cir. 2005) (applying the *Jackson* standard to state sentence enhancements).  Mr. Hudson challenges the sentence enhancement he received under California Penal Code Section 12022.7(a).  That section provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."  Under California law, section 12022.7(a) does not require a showing of specific intent to inflict great bodily injury (GBI).  *See People v. Poroj*, 190 Cal.App.4th 165, 172 (Cal. Ct. App. 2010) ("[S]ection 12022.7, subdivision (a) does not require a showing of intent to inflict GBI, either general or specific.  Rather, in order to have found the enhancement allegations true in counts 2 and 3, the jury only had to find defendant acted with general intent in committing the underlying DUI felonies and *personally inflicted* GBI on [the victim] *in the commission of those felonies*."); *People v. Carter*, 60 Cal.App.4th 752, 755-56 (Cal. Ct. App. 1998) (subdivision (a) originally required the defendant to intend to inflict GBI, but has since been amended to repeal the element of specific intent to inflict GBI) (*citing* Stats. 1995, ch. 341 § 1); *Hodge v. Uribe*, 2012 WL 6014666, at *11 (C.D. Cal. Nov. 25, 2012).

Mr. Hudson cites *People v. Santos*, 222 Cal.App.3d 723 (Cal. Ct. App. 1990), which held

that section 12022.7 requires specific intent to inflict great bodily injury. However, *Santos* predates the 1995 amendments which removed the specific intent requirement. Accordingly, it no longer applies. *See e.g. People v. Modiri*, 39 Cal.4th 481, 501 n.11 (Cal. 2006) (noting that the California Legislature long ago removed from section 12022.7(a) the requirement that great bodily injury be personally inflicted "with the intent to inflict the injury") (citing Stats.1995, ch. 341, § 1, p. 1851); *Poroj*, 190 Cal. App.4th at 172; *Carter*, 60 Cal.App.4th at 755-56; *Hodge*, 2012 WL 6014666 at *11.

Federal courts must look to state courts for the definitions of the substantive elements of state criminal offenses, and such determinations are binding on federal courts. *See Bradshaw v. Rickey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). Even a determination of state law made by an intermediate appellate court must be followed and may not be "'disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Hicks v. Feiock*, 485 U.S. 624, 630 n.3 (1988) (citation omitted).

This Court is bound by the California Court of Appeal's more recent holding in *Poroj* that § 12022.7(a) does not require specific intent to inflict great bodily injury for a sentencing enhancement under that section. *Poroj*, 190 Cal.App.4th at 172. Mr. Hudson's due process claim that he lacked the requisite specific intent for a great bodily injury enhancement necessarily fails because it is inapposite. Accordingly, Mr. Hudson is not entitled to habeas relief on this claim.

B.     <u>Competence</u>

Mr. Hudson claims that his due process rights were violated because he was both incompetent to stand trial and incompetent to represent himself. Respondent asserts that Mr. Hudson points to nothing in the record suggesting that the court of appeal's conclusion --- that the trial court conducted an adequate competence inquiry and the record did not support overturning the presumption of competence --- was unreasonable. The standard for competence to stand trial is different than the standard for competence to represent one's self, and thus the claims will be analyzed separately.

7

1.     <u>Competence to Stand Trial</u>

The opinion of the court of appeal summarized the trial court competency proceedings as follows:

> On March 24, 2015, appointed counsel advised Judge Mockler of a doubt as to defendant's competency to stand trial. Pursuant to Penal Code 1 section 1369, and over defendant's vehement protests, Judge Mockler appointed two psychologists to examine defendant. So far as the record reveals, only one of the psychologists contacted defendant and/or reported to the court. Dr. Jeremy Coles advised Judge Mockler: "I attempted to evaluate Mr. Hudson at the Contra Costa County Jail in Martinez .... However, when he entered the examination room and I informed him as to why I was there to see him, he responded, 'I'm competent man. They're full of shit because I wouldn't take their deal. They're saying I'm not competent. They're full of shit. I ain't got time.' He then exited the evaluation room."[2] After speaking with defendant's counsel, and reviewing some jail records, Dr. Coles concluded: "Without a current interview, it is not possible to make a sufficiently informed determination regarding Mr. Hudson's legal competency" or "Mr. Hudson's need for psychiatric medication."
>
> > [Footnote 2:] At a subsequent hearing, defense counsel told Judge Mockler that "Mr. Hudson refused to talk to the other doctor as well." (See fn. 6, post.)
>
> On April 30, 2015, following receipt of Dr. Coles's report, Judge Mockler held a hearing at which the following transpired:
>
> > "THE COURT: Mr. Hudson had been represented starting in August of 2014 by Mr. Daniel Cook, who was appointed counsel. He went through a preliminary examination with Mr. Cook and then through his arraignment up here. Then in November of 2014, Mr. Hudson requested to represent himself. I granted that. The matter was set for trial on December 17 of 2014. Mr. Hudson, who was representing himself at that point, was sent to a trial department and requested at that time that counsel be appointed. So on December 18th, the matter was back in front of me. And Mr. Briggs was appointed to represent Mr. Hudson. Mr. Briggs had made six appearances with Mr. Hudson up until and including March 19 of 2015. Then on March 24th of 2015, Mr. Briggs declared a doubt, criminal proceedings were suspended and two doctors were appointed ... to evaluate Mr. Hudson. We did receive one doctor's report from Dr. Coles, which is—does not—let's put it this way, does not have an opinion by the doctor one way or the other as to Mr. Hudson's competence.
>
> > *2 "The reason I'm making this record is because I do believe under *Godinez vs. Moran*, 509 U.S. 389 and *Indiana vs. Edwards*, 554 U.S. 164, that despite the fact that there has

been a recent declaration by counsel of a doubt as to Mr. Hudson's competence, I don't—I think that I can still make a determination whether Mr. Hudson is competent to represent himself. There has been no opinion and no court finding that Mr. Hudson is not competent. And, in fact, I have no evidence before me that he's not competent. So I'm going to find at this point by [a] preponderance of evidence that Mr. Hudson is competent and criminal proceedings are reinstated.

*Hudson,* 2017 WL 1075430 at *1-2. The California Court of Appeal found that, in determining that Mr. Hudson was competent to stand trial, the judge "understood the statutory procedures and complied with them," and that given the unusual circumstances present in Mr. Hudson's case, any "noncompliance with the literal letter of these procedure could not be considered prejudicial." *Id.* at *4. The court of appeal reviewed the trial judge's decision "to determine whether, construing the record most favorably to that decision, it has the support of substantial evidence," and rejected Mr. Hudson's claim that prejudicial procedural or substantive error undermined Judge Mockler's competency determination. *Id.* at *3, 6.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Mr. Hudson is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

A criminal defendant may not be tried unless he is competent, and he may not waive his right to counsel or plead guilty unless he does so competently and intelligently. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). The conviction of a defendant while legally incompetent violates due process. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994). The test for competence to stand trial is whether the defendant demonstrates the ability "to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396. The question "is not whether mental illness substantially affects a *decision*, but whether a mental disease, disorder or defect substantially affects the prisoner's *capacity* to appreciate his options and make a rational choice." *Dennis v. Budge*, 378 F.3d 880, 890 (9th Cir. 2004). "A 'rational choice' does not mean

9

a sensible decision." *Id.* A state court's finding of competency to stand trial is presumed correct if fairly supported by the record. *Deere v. Cullen*, 718 F.3d 1124, 1145 (9th Cir. 2013). No formal evidentiary hearing is required for the presumption to apply. *Id.* A habeas petitioner must come forward with clear and convincing evidence to rebut the presumption. *Id.*

Mr. Hudson asserts that Judge Mockler did not conduct a full competency hearing. However, in reviewing the competency proceedings and the judge's findings, the court of appeal applied the presumption from Penal Code § 1369 that a defendant is mentally competent unless he is proved by a preponderance of the evidence to be otherwise. The appellate court noted that a defendant is deemed competent to stand trial if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him. This is the correct standard under federal law, as *Godinez* requires that the defendant demonstrates the ability "to consult with his lawyer with a reasonable degree of rational understanding" and a "rational as well as factual understanding of the proceedings against him." 509 U.S. at 396.

The appellate court further noted that Mr. Hudson's attorney did not call other experts to testify nor proffer any form of additional evidence. Defense counsel did not cite to any of the statements he made to the psychologist nor draw the judge's attention to any behavior or in-court actions by Mr. Hudson that would be relevant to competency. Accordingly, the court of appeal reasonably found that Judge Mockler conducted an adequate competency hearing, albeit a truncated one due to the dearth of evidence, and "given the unusual circumstances, any noncompliance with the literal letter of [the California Rules of Court procedures for a trial on mental competency] could not be considered prejudicial" and it was "hard to conceive what the 'full competency hearing' desired by the defendant would have revealed." *Hudson*, 2017 WL 1075430 at *4. In light of this record, the court of appeal reasonably concluded that there was not evidence to overturn the presumption of competence.

Mr. Hudson turned down a plea deal for a 32-month sentence, opting instead to take his case to trial and represent himself, decisions which he now asserts had disastrous consequences and showed his incompetence. The court of appeal's opinion reviewed the portions of the trial

transcript where Judge Mockler went over the paperwork that Mr. Hudson filled out with the charges against him and the possible sentence he could receive, and reasonably determined that he had an understanding of the facts of the case against him and the potential for a life sentence. *See* RT 67-69.

Mr. Hudson asserts that there was evidence of his incompetence. He asserts that notwithstanding Dr. Coles' ultimate conclusion --- that he could not make a finding of incompetence without interviewing Mr. Hudson --- the provisional opinion in Dr. Coles' report was that Mr. Hudson was not competent. As noted by the court of appeal, Dr. Coles' provisional opinion came from reviewing Mr. Hudson's file and an interview with defense counsel who described Mr. Hudson as unable to cooperate with counsel in a meaningful manner, becoming belligerent when asked to cooperate, and employing unusual and delusional thoughts such as a fixation with the resisting arrest charge and a belief that he would prevail on a civil suit against the police for excessive force and therefore did not mind a lengthy prison sentence as he would be wealthy once released.[1] Dr. Coles' report noted that Mr. Hudson's jail records showed that while incarcerated Mr. Hudson had:

> "been treated intermittently for psychological symptoms. At times he has demonstrated an oppositional attitude. A history of depression was noted. . . intrusive memories of death and dying which he related to his history of the several gunshot wounds he incurred in 1992, 1996, 2002 and 2008. . . Multiple aggressive symptoms and anxiety symptoms are noted in the record. No evidence of psychotic symptomology was provided in this record. Mr. Hudson has received varied diagnosis while treated at the jail, including mood disorder not otherwise specified, anxiety disorder not otherwise specified, and PTSD."

RT 508-511. The court of appeal acknowledged that Dr. Coles' report contained a provisional opinion, quoting the portion of the report where Dr. Coles stated: "In summary, it is most probable that Mr. Hudson is not legally competent at the present time but an interview is necessary to confirm this provisional opinion." *Hudson,* 2017 WL 1075430 at *5. However, the court of

---

[1] Mr. Hudson's view that the resisting arrest charge was unfounded was not baseless. As noted by the court of appeal, the jury did not reach a verdict on the "resisting-officer" charges that Mr. Hudson faced. *Hudson*, 2017 WL 1075430 at n. 4.

appeal ultimately concluded that there was no evidence that Mr. Hudson was incompetent to stand

trial:

> The lack of a firm opinion from Dr. Coles does not establish the absence of substantial evidence, for expert evidence is not a requisite to a competency determination. Defendant's poor relations with Mr. Briggs are not probative. Because it was not Judge Mockler who declared a doubt as to defendant's competence, it may be presumed that nothing she observed led her to suspect that defendant was irrational or incompetent. Even the hearsay "delusions" attributed to defendant do not show that he failed to understand the nature of the proceedings against him. The fact that Judge Mockler had previously found defendant competent to waive his right to counsel is also significant, for that was certainly information "otherwise made available to the trial court" "at the time of its decision."

*Id.* (internal citations omitted). Mr. Hudson attempts to parlay the inconclusive report, written by

a psychologist who was unable to interview him, into a showing of mental incompetence. The

state courts reasonably rejected his argument for the reasons explained above. The opinion of the

California Court of Appeal upholding Judge Mockler's competency determination was neither

contrary to nor an unreasonable application of federal law under 28 U.S.C. § 2254(d). It was not

unreasonable for the state court to conclude that Mr. Hudson had the ability "to consult with his

lawyer with a reasonable degree of rational understanding" and a "rational as well as factual

understanding of the proceedings against him." The trial judge had two occasions to observe Mr.

Hudson's competence: (1) when he did the *Faretta* paperwork, and (2) in the colloquy before

being allowed to represent himself. Both times reflect Mr. Hudson's understanding of the

proceedings against him. The only evidence which could have suggested incompetence was the

letter from the one psychologist stating his report was inconclusive because he could not interview

Mr. Hudson. *See Godinez*, 509 U.S. at 396. Mr. Hudson has not put forth clear and convincing

evidence to rebut the presumption that the state court's competency finding was reasonable.

Accordingly, Mr. Hudson is not entitled to habeas relief on this claim.

    2.   <u>Competence for Self-Representation</u>

    The trial court found Mr. Hudson competent and went through the following colloquy for

self-representation pursuant to *Faretta v. California*, 422 U.S. 806 (1975):

    THE COURT: …Mr. Hudson, I see that you have initialed the

appropriate paragraphs on the *Faretta* form.

THE DEFENDANT: Yes.

THE COURT: You do indicate… here as to ---in answer to 2(d) that you did represent yourself in the year 2000, right?

THE DEFENDANT: Correct.

THE COURT: Under charges and consequences I see you've written out all the charges you're facing and you've also indicated based on the enhancements that your maximum sentence is 35 [years] to life, which may be a little over-stating the maximum amount of time, but that's fine. The important thing is that you understand that you could potentially get a life sentence. So Mr. Hudson, just so we make a record here, you understand that if you --- if I grant your right [sic: request] to represent yourself, that you will be expected to conduct yourself in the court proceedings just the way any other attorney would be expected to conduct themselves. Do you understand that, sir?

The DEFENDANT: Yes, your Honor.

THE COURT: You also understand that if you actually go to a trial, or any type of contested hearing, a motion or whatever, that the judge who is hearing the trial or the motion can't help you out and that you will be up against a seasoned prosecutor who is going to know the rules of evidence and have tried cases before. Do you understand that?

THE DEFENDANT: Yes, ma'am.

MR. BOLEN [the prosecutor]: The Court should also be aware that last time he was in trial he said he couldn't do a trial. He's playing games [with] the Court. It should be clear to the Court he told the last judge in the trial department, I can't do a trial without an attorney. He was ready to go to trial with Mr. Briggs and started giving Mr. Briggs a hard time because he [defendant] didn't want to go to trial. And Mr. Hudson clearly doesn't want to go to trial. . . He's going to be back again asking for an attorney.

THE COURT: The Court is well aware of that, but the Court is also aware of the fact that it is reversible error per se for a judge to deny a person's rights to represent themselves in the absence of evidence that they've been abusing the process or are patently mentally ill or are threatening witnesses. I don't have any of that evidence here.

RT 67-69. The trial court then warned Mr. Hudson that he (Hudson) was not to engage in dilatory tactics: "[Y]ou can't be getting into a trial department and saying you can't handle it and you want an attorney, only to find fault with every attorney who represents you." RT 70.

The court of appeal upheld the trial judge's finding that Mr. Hudson was competent to

represent himself. In upholding the trial court's decision finding Mr. Hudson competent to represent himself and granting his request to represent himself pursuant to *Faretta*, the Court of Appeal noted the limited exception from *Indiana v. Edwards*, 554 U.S. 164 (2008), for "gray-area" defendants with severe mental illness, but stated that Mr. Hudson had no history or diagnosis of mental illness, severe or otherwise. Psychologist Dr. Coles said in one paragraph of his letter that he reviewed 8 months of jail medical records and that Mr. Hudson had various diagnoses in jail. However, there were no details regarding the various jail diagnoses such as who diagnosed, how symptoms presented, what treatment was given, etc. Mr. Hudson's attorney did not submit any evidence of mental illness. Thus there was no tangible evidence of a particular mental illness, and no evidence regarding severity. Accordingly, the Court of Appeal rejected Mr. Hudson's claim that prejudicial procedural or substantive error undermined the trial judge's determination that he was competent to represent himself.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Mr. Hudson is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

The standard for a defendant to be competent to represent himself at trial is higher than the standard to stand trial; a defendant may be "competent" to stand trial, but not have sufficient mental capacity to "carry out the basic tasks needed" to represent himself at trial. *Edwards*, 554 U.S. at 174-78. "Here the higher standard seeks to measure the defendant's ability to conduct trial proceedings." *Id*. at 173. "In certain instances an individual may well be able to satisfy *Dusky's* mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Id*. at 175-176. "The Supreme Court has not set forth a specific standard for a criminal defendant's competence to exercise his right to self-representation, however, instead leaving the determination of whether the defendant is competent to conduct trial proceedings to the trial court's discretion. The *Edwards* court reasoned that the trial judge will often prove best

14

able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Dixon v. Ryan*, 932 F.3d 789, 804 (9th Cir. 2019) (internal citations and quotations omitted).

If the defendant is in the "gray area" where he is competent to stand trial and waive counsel but suffers from a severe mental illness to the point where he is not competent to conduct trial proceedings, the Sixth Amendment does not bar the state from insisting upon representation. *Edwards*, 554 U.S. at 172-77 (holding that the defendant -- who suffered from severe schizophrenia, was found incompetent to stand trial multiple times, and was committed to the state hospital while awaiting trial -- was competent to stand trial but not competent to represent himself due to his severe mental illness).

Additionally, as stated in *Moran v. Godinez*, 57 F.3d 690, 695 (9th Cir. 2004) (internal citations omitted):

> Due process requires a court to conduct a competency hearing on its own motion before permitting a defendant to waive constitutional rights, whenever a reasonable judge would be expected to have a *bona fide* doubt as to the defendant's competence. A *bona fide* doubt should exist when there is substantial evidence of incompetence. Although no particular facts signal incompetence, suggestive evidence includes a defendant's demeanor before the trial court, previous irrational behavior, and available medical evaluations."

A state may presume that a defendant is competent and require him to shoulder the burden of proving his incompetence. *See Medina v. California*, 505 U.S. 437, 449 (1994). A state therefore is not constitutionally obligated to place the burden of proof on the prosecution to establish competence, or to relieve defendant of the burden of establishing his incompetence. *See Moran*, 57 F.3d at 697.

To determine whether a defendant actually understands the nature and consequences of a request to waive counsel, the court must abide by the principles set forth in *Faretta*, 422 U.S. at 835. The defendant must "be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of self-representation." *United States v. Balough*, 820 F.2d 1485, 1487 (9th Cir. 1987). The defendant must be allowed to exercise his right to self-representation so long as he knowingly and intelligently waives his right to counsel and is able and

15

willing to abide by rules of procedure and courtroom protocol. *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984).

Mr. Hudson asserts that the trial judge misunderstood the scope of her discretion in determining whether he was competent to represent himself and should have held a full competency hearing before granting his *Faretta* motion. However, as noted in the Court of Appeal opinion, the trial judge did hold a competency hearing. It was a truncated hearing because the defense presented no evidence to show incompetence. Mr. Hudson cannot fault the trial court for not stretching out the hearing where there was so little evidence.

In his traverse Mr. Hudson points to Dr. Coles' report, and the fact that he turned down a 32- month plea deal when facing a life sentence as evidence of his incompetence to represent himself. He argues that his offense was a non-violent DUI and should have been a California Vehicle Code case, not a criminal matter, and that he believed the 32 months offered would be the most time given and never believed he would be given a life sentence because a DUI case carried only penalties of 16 months, 2 years and 3 years. These assertions are belied by the record, which shows that Mr. Hudson twice filled out *Faretta* paperwork and in so doing reviewed with the judge the nature of the case against him, the charges, and the potential penalties.

While in hindsight Mr. Hudson acknowledges that rejecting the plea deal was a poor decision, he points to nothing in the record that would rebut the presumption that the state court correctly found him competent. Mr. Hudson's former attorney, Mr. Briggs, did express a doubt regarding competence, but did not submit any evidence of incompetence. Mr. Hudson vehemently asserted he was competent and refused to meet with the court-appointed psychologist Dr. Coles. [2] While Dr. Coles' report offers a provisional determination of incompetence based on reviewing jail medical records and information from defense counsel, Dr. Coles' report clearly states that it is inconclusive because Dr. Coles was unable to complete the evaluation. The only evidence of possible mental illness in the record is Dr. Coles' report which notes varying diagnoses from jail records. But as noted above, the record does not contain evidence of a severe mental illness such

---

[2] Defense counsel informed the judge that Mr. Hudson also refused to allow the other psychologist to examine him. *Hudson*, 2017 WL 1075430 at n. 2, 6.

as that which the Court in *Edwards* found to fall into the "gray area." 554 U.S. at 172-77. The record is distinguishable from the record in *Edwards* where there was a diagnosis of severe schizophrenia, multiple psychiatric evaluations and reports, and several state hospital commitments due to being found incompetent to stand trial on several occasions. *Id.* As with his claim that he was incompetent to stand trial, Mr. Hudson attempts to parlay Dr. Coles' inconclusive report into a showing that he was mentally incompetent to represent himself. Again, the court of appeal reasonably rejected his argument.

In reviewing Mr. Hudson's competency claim, the court of appeal's opinion was not an unreasonable application of federal law under 28 U.S.C. § 2254. State court competency determinations are entitled to a presumption of correctness. *See Brewer v. Lewis,* 989 F.2d 1021, 1027 (9th Cir. 1993) (citing *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990)). A federal court may overturn a state court competency finding only if it is not fairly supported by the record. *See id.* Here, the state court competency finding is fairly supported by the record. The decision of the court of appeal was neither unreasonable nor contrary to federal law, and Mr. Hudson is not entitled to habeas on this claim.

C.    *Marsden* Motion

Mr. Hudson claims that his Sixth Amendment right to counsel was violated when the trial judge denied his pretrial motion for substitute counsel when he was represented by Mr. Briggs. He no longer wished to be represented by Mr. Briggs because he felt they were in conflict and he wanted to represent himself.

Initially, Mr. Hudson was represented by an appointed attorney named Mr. Cook. Mr. Hudson tried unsuccessfully to have Mr. Cook replaced because Mr. Hudson said there was a conflict and he couldn't work with Mr. Cook. After that *Marsden*[3] motion to replace Mr. Cook was denied, Mr. Hudson's *Faretta* motion was granted and he began representing himself. On December 17, 2014, the day his case was set for trial, Mr. Hudson requested a lawyer and the

---

[3] In *People v. Marsden*, 2 Cal.3d 118 (Cal. 1970), the court set forth the procedural requirement for a hearing to inquire into the reasons for requesting substitute counsel and reviewed the erroneous denial of substitute counsel.

following day Mr. Briggs was appointed to represent him.  The trial was postponed.  Four months

later, Mr. Hudson requested a *Marsden* hearing because he no longer wanted to be represented by

Mr. Briggs, stating that "Briggs and I conflict a hundred percent."  RT 56.  During the closed

hearing, the following exchange occurred:

> THE COURT: So, Mr. Hudson, I mean it's clear you've made it
> evident in open court that you're very very unhappy.  Why don't we
> – what is it that – I mean, what is it that you want to do in this case?
>
> THE DEFENDANT: I would like to have my *pro per* status back –
> returned.  This man is like a surrogate prosecutor.  He went behind
> my back and labeled me incompetent, violating my right to a speedy
> trial.  There was no need to label me incompetent.  They violated my
> rights to a speedy trial by doing that, knowing that they had ten days
> to have me in court.  This was a blatant attempt by the D.A., and this
> man, he's in cahoots with them.  This man cannot save the -- I
> would probably catch a case if I was in a room with this man alone.
> So I can be nowhere near this man, period.  That's my word, your
> Honor.  This man labeled me incompetent behind my back.  As far
> as I'm concerned he's a surrogate prosecutor and works with the
> D.A.  He's probably a D.A. himself.
>
> THE COURT: Mr. Hudson, is there any attorney that you would feel
> was not -- let me put it in a more positive point of view.  Is there
> any attorney that you feel you could work with?
>
> THE DEFENDANT: I'm quite sure there's an attorney that I would
> be able to work with.  This man would not be the attorney.  That is
> definite.  Like I said, I'm more competent than probably he is,
> considering the way he has handled this case so far.  And he has the
> nerve to name me incompetent.  That is a disgrace and a mark
> against me, period.  He show [sic] his incompetence in doing that.
>
> THE COURT: Well, Mr. Hudson, you did have a different attorney
> through the prelim and during your initial proceedings in this
> department.  And you were – you had several *Marsdens* with that
> attorney.
>
> THE DEFENDANT: Correct.  The only thing that I needed to do is
> which was why I took this attorney on was to get my motions filed
> when I was *pro per*.  When I was filing my motions, they weren't
> going through the proper channels, so I would have this attorney
> send my motions through the proper channels.  He didn't do that
> correctly.  He stepped on my toes in every way that I was
> representing my case.  He had my case going.  He changed to a
> complete different route which let's [sic] me know this man is not in
> the best interest of me.  He's only thinking about his pockets.

RT 59-60.  When asked if he wanted to add anything, Mr. Briggs stated, "Just to deny Mr.

Hudson's outrageous allegations."  RT 61.  When asked by the judge if he felt he could still work

with Mr. Hudson, Mr. Briggs answered: "Based on his comments today, no, I don't." *Id*. The judge then indicated she was inclined to deny the *Marden* and grant a new *Faretta* motion. She stated: "I don't think I have grounds to grant the *Marsden*. I mean, Mr. Hudson, I know you don't want to work with Mr. Briggs. And, you — to me as a judge it's like a situation where a defendant files a complaint against a lawyer with the State Bar. That has never been sufficient to constitute a conflict requiring an attorney to get off the case." RT 62. *See Consiglio v. Prunty*, 121 F.3d 715(9th Cir. 1997) (unpublished) (mere filing of a bar complaint, on its own, does not constitute an irreconcilable conflict requiring the granting of a motion to substitute counsel). Ultimately, because proceedings were still suspended for the competency hearing, the judge only denied the *Marsde*n motion, gave Mr. Hudson the *Faretta* paperwork to complete, and ordered everyone back for a hearing two days later. At that hearing Mr. Hudson's *Faretta* motion was granted.

On appeal Mr. Hudson challenged the denial of his *Marsden* motion pertaining to attorney Briggs. The opinion of the California Court of Appeal stated that even assuming error, solely for the purposes of the appeal, it would not require reversal. The court of appeal reasoned that because only 48 hours passed between the denial of the *Marsden* and the granting of the *Faretta*, and nothing adverse to Mr. Hudson happened during those 48 hours, the assumed erroneous denial of the *Marsden* motion would be harmless beyond a reasonable doubt. In support of its decision the court of appeal relied on two cases, *People v. Chavez*, 26 Cal.3d 334, 348-349 (Cal. 1980) and *People v. Loya*, 1 Cal.App.5th 932, 945 (Cal. Ct. App. 2016). In *Chavez*, the court held that the *Marsden* case did not enunciate a per se reversible error test, rather a defendant must show prejudice when a trial judge erroneously denies a request for the continued appointment of particular counsel without adequately inquiring into the reasons for the request. In *Loya*, the court noted that the standard for prejudice for a denied *Marsden* motion is whether the error was harmless beyond a reasonable doubt, which is the standard for reviewing constitutional errors set forth in *Chapman v. California*, 386 U.S. 18, 24 (1967).

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Mr. Hudson is

entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

The Sixth Amendment grants criminal defendants who can afford to retain counsel a qualified right to hire counsel of their choice. *Wheat v. United States*, 486 U.S. 153, 159, 164 (1988). A criminal defendant who cannot afford to retain counsel has no right to counsel of his own choosing. *See id.* at 159. The Sixth Amendment guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel. *See Morris v. Slappy*, 461 U.S. 1, 14 (1983). The essential aim is "to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. Nonetheless, to compel a criminal defendant to undergo a trial with the assistance of an attorney with whom he has become embroiled in irreconcilable conflict is to deprive the defendant of any counsel whatsoever. *Daniels v. Woodford*, 428 F.3d 1181, 1197 (9th Cir. 2005).

When a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982). The inquiry need only be as comprehensive as the circumstances reasonably would permit, however. *King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir. 1992). In reviewing whether the trial judge should have granted a motion to substitute counsel, the reviewing habeas court may consider the extent of the conflict, whether the trial judge made an appropriate inquiry into the extent of the conflict, and the timeliness of the motion to substitute counsel. *Daniels*, 428 F.3d at 1197-98.

In *Schell v. Witek*, the Ninth Circuit held that the "ultimate constitutional question" on federal habeas review is whether the state trial court's denial of the *Marsden* motion "actually violated [the defendant's] constitutional rights in that the conflict between [the defendant] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc). Not every conflict or

disagreement between the defendant and counsel implicates Sixth Amendment rights. *Id*. at 1027 (citing *Morris*, 461 U.S. at 13-14). However, if a serious conflict resulted in the constructive denial of counsel, no further showing of prejudice is required and the defendant's trial is presumed to have been unfair. *See id*. at 1027-28 (citing *Strickland v. Washington,* 466 U.S. 668, 692 (1984)). "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland*, 466 U.S. at 692. But if a serious conflict did not rise to the level of a constructive denial of counsel, the defendant must prove that he was prejudiced by the conflict. *See Schell,* at 1027-28 (citing *Strickland*, 466 U.S. at 691-92).[4]

"[H]abeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice." *Davis v. Ayala*, 135 S.Ct. 2187, 2197 (2015) (citing *Brecht v. Abramson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted). If a state court finds an error harmless, that determination is reviewed under the highly deferential AEDPA standard. *Id*. at 2198. This means that habeas relief is not available for the error "unless *the harmlessness determination itself* was unreasonable." *Id.* at 2199 (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007).

During the closed hearing in which Judge Mockler inquired into Mr. Hudson's conflict with Mr. Briggs, Mr. Hudson was clear that what he wanted was a return to his *pro per* status. Indeed, when asked at the onset, "What is it that you want to do in this case?" Mr. Hudson promptly stated: "I would like to have my *pro per* status back." RT 59. The main example that Mr. Hudson gave of why he was unhappy with Mr. Briggs was that Mr. Briggs had raised competency concerns, which angered Mr. Hudson as he felt he was more than competent. Mr. Hudson was also unhappy because he claimed that the only reason he asked for an attorney was to

---

[4] The term "conflict of interest" is a term of art that ordinarily "denotes representation of multiple conflicting interests, such as an attorney's representation of more than one defendant in the same criminal case, or a representation of a defendant where the attorney is being prosecuted for related crimes." *See Stenson v. Lambert*, 504 F.3d 873, 886 (9th Cir. 2007). That sort of conflict could be the basis for a motion for substitution of counsel. There is also another kind of conflict, usually pertaining to the conduct of the defense or trial strategy, that is referred to as an "irreconcilable conflict" between attorney and client that gives rise to many motions to substitute counsel. *See id.* It is this latter sort of perceived irreconcilable conflict that prompted Mr. Hudson's *Marsden* motion.

file motions he wanted filed, and Mr. Briggs hadn't filed the motions, instead "stepping on my toes in every way that I was representing my case." RT 60. Mr. Hudson also believed that Mr. Briggs was working with the prosecution and acting like a prosecutor.

These disagreements about defense strategy, and Mr. Hudson's clear dislike and distrust of Mr. Briggs, reflect a situation in which Mr. Hudson likely did not have a "meaningful relationship" with Mr. Briggs, *see Morris*, 461 U.S. at 14, but not a situation in which Mr. Hudson's Sixth Amendment right to counsel was violated by the trial judge's refusal to appoint substitute counsel. The case is unlike cases where courts have recognized a complete breakdown in communication, such as: *Daniels v. Woodford*, 428 F.3d 1181, 1197-1201 (9th Cir. 2005) (finding constructive denial of counsel where defendant's distrust of counsel was "understandable" given mishandling by the trial judge of several issues, and resulted in complete breakdown in the communication between defendant and counsel; complete breakdown in communication meant that counsel was unable to discuss possible defense strategies with defendant or to discover and assess basic information about the case from his perspective so that they might pursue that strategy); *U.S. v. Moore*, 159 F.3d 1154, 1159-60 (9th Cir. 1998) (testimony by defendant and counsel evidenced irreconcilable conflict amounting to breakdown of attorney–client relationship, for example: defendant threatened to sue attorney for malpractice, and attorney testified he felt physically threatened by defendant; defendant described several instances when he was unsatisfied with the attorney's work or lack thereof, and instances when the attorney refused to communicate with him; defendant persistently came before the judge on several occasions to show evidence of irreconcilable conflict.); *U.S. v. Adelo-Gonzalez*, 268 F.3d 772, 778-780 (9th Cir. 2001) (Defendant recounted bad language and threats from attorney, including attorney threatening to "sink him for 105 years," in court attorney called his client a liar and openly opposed substitution.) "An irreconcilable conflict in violation of the Sixth Amendment occurs only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel. Disagreements over strategical or tactical decisions do not rise to level of a complete breakdown in communication." *Stenson*, 504 F.3d at 886 (internal citations omitted).

In light of the record, it was not unreasonable for the state court of appeal go directly to a harmless error analysis.  Mr. Hudson's complaints about Mr. Briggs do not reflect a conflict so serious that it rose to the level of a constructive denial of counsel.  *See Schell*, 218 F.3d at 1026-28.  The Court of Appeal assumed error in the trial court's denial of the pre-trial *Marsden* motion for purposes of the appeal, but found that even any assumed error was harmless because there was no showing of prejudice as nothing adverse occurred during the two days between the denial of the *Marsden* and the granting of the *Faretta*.  Mr. Hudson has not shown that he was prejudiced by the denial of his *Marsden* motion.  *See Davis*, 135 S.Ct. at 2197.  The California Court of Appeal's conclusion – that there was no showing of prejudice where nothing adverse happened in Mr. Hudson's case during the two days between the denial of his *Marsden* and him resuming his *pro per* status – was not unreasonable.

The decision of the court of appeal was neither an unreasonable application of federal law nor contrary to federal law under 28 U.S.C. § 2254.  Accordingly, Mr. Hudson is not entitled to habeas relief on this claim.

1. No Certificate Of Appealability

A certificate of appealability will not issue because reasonable jurists "would not find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, a certificate of appealability is denied.

## VI.  CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **DENIED**.  Petitioner's request for a ruling is moot as this order constitutes the ruling, and his request for an evidentiary hearing is denied as unnecessary.  The Clerk shall close the file.

**IT IS SO ORDERED**.


Dated: September 18, 2019

_____
EDWARD M. CHEN
United States District Judge